| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| NEXUS BANKRUPTCY<br>BENJAMIN HESTON (297798)<br>3090 Bristol Street #400<br>Costa Mesa, CA 92626<br>Tel: 949.312.1377<br>Fax: 949.288.2054<br>ben@nexusbk.com<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Debtor | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>MARK ANTHONY CIRILLO,<br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 2:25-bk-16724-WB<br><br>CHAPTER 13<br><br>**DEBTOR'S MOTION FOR AUTHORITY<br>TO SELL REAL PROPERTY<br>UNDER LBR 3015-1(p)**<br><br><br>[No Hearing Required] |
|---|---|

Debtor moves this court for an order authorizing the Debtor to sell the real property, described below, pursuant to the terms and conditions described herein.

1. Debtor's Chapter 13 Plan (Plan) was confirmed on: <u>N/A.</u>

2. Debtor wishes to sell the real property (Property) located at:
<u>2640 Vineyard Ave, Los Angeles, CA 90016</u>

The Property is more particularly described in Exhibit "A" attached hereto.

☐ Debtor wishes to modify the Plan for early payment of the Plan as described in the *Motion to Modify Plan* submitted by Debtor concurrently with this Motion.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

3. The sale price of the Property is $ 1,139,000.00 . The following are all of the encumbrances of record against the Property:

   a. Wilmington Savings Fund Society, FSB - $440,000
   b. JPMorgan Chase Bank, NA - $77,000
   c. CaliforniaFIRST - $30,400
   d. 
   e. 

   *(Add additional page if necessary)*

4. After payment of the foregoing encumbrances and all costs of sale:
   ☒ there will remain the approximate sum of $ 508,000.00 ; OR
   ☐ no proceeds will remain.

5. ☒ (a) The chapter 13 trustee is hereby authorized to make demand upon escrow for sufficient funds to pay off the Plan with a:
   ☒ 100% dividend to unsecured creditors; OR
   ☐ _____ % divided as indicated in the confirmed plan.

   After escrow's payment of the encumbrances listed above, any remaining funds shall be paid directly to debtor.

   **OR**

   ☐ (b) The chapter 13 trustee is hereby authorized to make demand upon escrow for the balance remaining after escrow's payment of the encumbrances listed above even though the amount is insufficient to pay off the Plan. The sale is for the fair market value of the Property.

6. The escrow is being processed by:
   Escrow company name:   Glen Oaks Escrow
   Address:   6100 San Fernando Road, Suite 100
              Glendale, California, 91201

   Telephone:   818-502-0400
   Facsimile:   818-660-1903
   Escrow officer:   John Salmon
   Escrow number:   110-194973.JS

7. Supporting documents attached to this Motion are:
   a. Exhibit A – Legal description with street address
   b. Exhibit B – Escrow instructions and documents
   c. Exhibit C – Estimated closing statement
   d. Exhibit D – Schedules I and J of the bankruptcy petition

9. Debtor agrees to provide to chapter 13 trustee a certified copy of the escrow closing statement within 14 days of the close of escrow as a condition to any approval of this motion.

Date:  01/29/2026 

/s/Benjamin Heston
**Attorney for Debtor**

I declare under penalty of perjury that the following is true and correct.

Date:  01/29/2026 

Debtor

Date: 

Joint Debtor

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# EXHIBIT A

## EXHIBIT "A"
## LEGAL DESCRIPTION

Lot 14 of Tract 4831, in the City of Los Angeles, County of Los Angeles, State of California, as shown on map filed in Book 54, Page 90 of Maps in the office of the County Recorder of said County. Except: the east 84 feet thereof.

Seller(s) Initials _____ / _____                     Buyer(s) Initials _____ / _____

# EXHIBIT B



**GLEN OAKS ESCROW IS AN INDEPENDENT ESCROW COMPANY OPERATING UNDER A LICENSE FROM THE CALIFORNIA DEPARTMENT OF FINANCIAL PROTECTION AND INNOVATION, LICENSE NUMBER 9631459**

**Notice of Related Companies:** Glen Oaks Escrow, a California corporation, is wholly owned by First American Financial Corporation, a Delaware publicly-held corporation ("FA"). Because of this relationship, the referral of business to FA may provide a financial or other benefit to FA, and/or to its other affiliated or subsidiary companies.

**ESCROW OFFICER:** John Salmon                                                          **DATE:**      January 16, 2026
**ESCROW NO:** 110-194973-JS

## SUPPLEMENTAL SALE ESCROW INSTRUCTIONS

I/We, the undersigned Buyer and Seller (collectively "Parties"), hand Glen Oaks Escrow, ("Escrow Holder"), a copy of the California Residential Purchase Agreement and Joint Escrow Instructions Dated January 13, 2026, Seller Multiple Counter Offer No. 1, Buyer Counter Offer No. 1 and Seller Counter Offer No.1 ("Purchase Agreement"), which are incorporated by reference and shall serve as escrow instructions when executed and legible. Unless Escrow Holder gives written notice, it will not perform certain acts in the Purchase Agreement. Escrow Holder's duties are limited to those paragraphs in the Purchase Agreement identifying its responsibilities and the duties set forth in these Supplemental Sale Escrow Instructions and the General Provisions ("Escrow Instructions"). All other terms and conditions in the Purchase Agreement are between Buyer(s), Seller(s), and their respective brokers only. Escrow Holder is not to be concerned with, or liable for, any obligations, express, implied, or equitable among the Buyer(s), Seller(s), or their real estate broker(s) in the Purchase Agreement.

If a conflict arises between the terms of the Purchase Agreement and any Escrow Instructions, the Purchase Agreement shall govern as between the Buyer(s) and Seller(s). The Escrow Instructions shall govern the duties and obligations of Escrow Holder.

---

**The following is restated from the Purchase Agreement:**

| | |
|---|---:|
| Buyer has deposited with Escrow Holder an initial deposit of | $34,170.00 |
| Buyer will execute and deliver a New First Deed of Trust in the amount of | $1,082,050.00 |
| Prior to close of escrow, Buyer will deposit in the manner called for herein, an additional amount of | $22,780.00 |
| **PURCHASE PRICE (TOTAL)** | **$1,139,000.00** |

**CLOSE OF ESCROW ON**                                                          **February 17, 2026**

---

The undersigned will deliver to Escrow Holder any instruments or funds required for it to comply with these Escrow Instructions, all of which it may use, provided that, by Close of Escrow, it has received a preliminary report from a title company committing to issue a policy of title insurance as required under the Purchase Agreement with the title company's exceptions on the real property in the County of Los Angeles, State of California described as:

LEGAL DESCRIPTION RECEIVED IS ATTACHED AS EXHIBIT "A" AND IS MADE A PART HEREOF

**SELLER STATES THE PROPERTY ADDRESS IS: 2640 Vineyard Avenue, Los Angeles, CA 90016**

**TITLE SHALL BE VESTED IN: Dara Barber and Thomas Joseph Barber, Trustees of Dara and Thomas Barber Trust**

(Buyer shall provide Escrow Holder a complete vesting during escrow.  Escrow Holder is authorized and instructed to correct the grant deed being delivered in the above numbered escrow to reflect the vesting designated by Buyer, over the notarized signature of Seller thereon, with no further authorization required.)

Seller(s) Initials _____ / _____                          Buyer(s) Initials _____ / _____

**ENCUMBRANCES:**
1. Current general and special county and city taxes (if any) for the current fiscal year.
2. Current covenants, conditions, restrictions, rights of way, easements, and the exception or reservation of minerals, oil, gas, water, carbons, and hydrocarbons on or under the land, now of record.
3. The lien of supplemental taxes assessed under Chapter 3.5 (commencing with Section 75) of the Revenue and Taxation Code of California.
4. A First Deed of Trust to record securing a note for $1,082,050.00.

**INSTRUCTIONS FOR DEPOSIT OF FUNDS**

Parties are aware that funds deposited into escrow must be "Good Funds" under California Insurance Code §12413.1 and are not available for use until cleared by Escrow Holder's bank. All parties and depositors acknowledge their exclusive duty to deliver funds into the possession of Escrow Holder and, if by wire transfer, only to the  FIRST AMERICAN TRUST, FSB account detailed below. Escrow Holder has no duty regarding funds relating to this escrow until its bank confirms deposit and credit. Before initiating any wire transfer to Escrow Holder's bank, Parties and any depositors must independently confirm Escrow Holder's wire account details by telephone with Escrow Holder's employee(s) assigned to the transaction. **Failure to verify wire transfer information by telephone with Escrow Holder bars any party to this escrow or third-party depositor from claiming liability against Escrow Holder if the funds are transmitted to an erroneous or unauthorized bank account. Funds should not be transmitted to Escrow Holder for deposit until requested by Escrow Holder.**

**ALL FUNDS WIRED TO ESCROW HOLDER MUST BE DIRECTED TO:**

| | |
|---|---|
| California Bank | FIRST AMERICAN TRUST, FSB |
| Address | 5 FIRST AMERICAN WAY, Santa Ana, CA 92707 |
| | |
| ABA | 122241255 |
| Credit to | Glen Oaks Escrow |
| Account No. | 3157200000 **Please call our office to verify wire instructions** |
| Reference | Escrow No. 110-194973-JS |

***Please note: Glen Oaks Escrow will not change wire information at any time during this escrow. If parties receive anything asking them to wire funds to a different bank or account number, call our office immediately.***

**NO AMENDMENT OR INSTRUCTION TO AMEND THE ABOVE WIRE DETAILS FOR ESCROW HOLDER'S BANK AND ACCOUNT NUMBER WILL HAVE ANY FORCE, EFFECT, OR VALIDITY UNLESS SIGNED AND NOTARIZED BY ESCROW HOLDER.**

<u>**Final Funds to Escrow:**</u>

Escrow Holder requires all final funds due from Buyer or Seller to be deposited by wire transfer **Two (2) Business** days prior to Close of Escrow. Escrow Holder does not accept ACH transactions, electronic deposits of funds, or direct cryptocurrency such as Bitcoins. All wire transfers must be drawn or originate from a bank or savings and loan association with an office in the United States and be payable to Escrow Holder. Funds cannot be directly deposited in-person at a branch of Escrow Holder's banking institution. Lenders may fund loan proceeds directly to the title company utilized in this transaction ("Title Company"). Buyer's lender ("Lender") shall obtain wire instructions directly from Title Company utilized in this transaction.

Buyer(s) Initials _____ / _____

**SUPPLEMENTAL ESCROW INSTRUCTIONS:**

1.   **Amendment to the Purchase Agreement - Escrow and Title:** Parties acknowledge and amend the Purchase Agreement as follows: Escrow Holder shall be Glen Oaks Escrow; and Owner's title policy shall be issued by Equity Title Company

2.   **Notice Regarding Cancellation:** Parties are advised Escrow Holder will require mutually signed release instructions from them, judicial decision, or arbitration award for the release of funds in escrow.

3.   **Homeowners Associations (if applicable):** Under the Purchase Agreement, Seller shall pay directly to HOA (or its Management Company) or deposit funds into escrow funds sufficient for fees charged for preparing HOA documents required by Civil Code Section 4525. Escrow Holder may advance fees on behalf of Seller to obtain HOA documents and Seller will reimburse Escrow Holder for fees advanced, regardless of whether this transaction closes. Unless otherwise agreed, Seller shall pay any HOA move-out fees while Buyer will pay HOA move-in fees.

4.   **Notice Regarding Cannabis:** Parties understand and acknowledge that, due to the conflict between Federal and State laws concerning the cultivation, distribution, manufacture, and/or sale of cannabis, Escrow Holder is not able to process any transactions involving land or businesses associated with these activities, as federally insured banks will not permit it to deposit funds into their accounts and title companies will not close or insure any such transaction.

5.   **Binding Contract:** The Parties are aware that this document is a legally binding contract among Escrow Holder and Parties and, in the event Parties do not understand the contents as stated herein to their satisfaction, they are advised to consult their attorney prior to the execution of same.

**THE ADDITIONAL ESCROW INSTRUCTIONS AND TERMS ("GENERAL PROVISIONS") ARE ATTACHED AND INCORPORATED BY THIS REFERENCE. THE UNDERSIGNED ACKNOWLEDGE THEY HAVE RECEIVED, READ, AND UNDERSTAND THE GENERAL PROVISIONS AND APPROVE, ACCEPT, AND AGREE TO BE BOUND BY THEM.**

**SELLER:**                                                    **BUYER:**

_____          Dara and Thomas Barber Trust
Mark A. Cirillo
                                                              By:_____
                                                                 Dara Barber, Trustee

                                                              By:_____
                                                                 Thomas Joseph Barber, Trustee

Seller(s) Initials _____ / _____                    Buyer(s) Initials _____ / _____

### ADDITIONAL ESCROW INSTRUCTIONS AND TERMS (GENERAL PROVISIONS)

1. **Terms and Subject Headings**: In these Additional Escrow Instructions and Terms (General Provisions), the terms "You", "Your", and "Escrow Holder" shall mean Glen Oaks Escrow, wherever the context requires. The masculine gender includes the feminine and/or neutral and the singular number includes the plural.

2. **Opening of Escrow:**

   A. Except as limited by the terms of the Purchase Agreement, Offer to Purchase, Deposit Receipt, C.A.R. Form RPA, AIR Form, or any other written purchase agreement between Parties received by Escrow Holder; Escrow Holder's duty to act as an Escrow Holder **shall not commence** until these instructions are signed by Seller and Buyer and received by Escrow Holder. Until such time, either Seller or Buyer may unilaterally cancel the proposed escrow by written request delivered to Escrow Holder, whereby a party may unilaterally withdraw funds or documents deposited with Escrow Holder by that party.

   B. These Escrow Instructions may be executed in counterparts, each of which shall be deemed an original regardless of when executed and delivered. All such counterparts together shall constitute one and the same document. Any and all further escrow instructions, amendments, or supplements received by Escrow Holder shall also be governed by the terms and conditions of these Escrow Instructions, except as amended or modified by the mutual agreement of Parties and Escrow Holder.

3. **Responsibility of Escrow Holder:**

   A. Parties agree Escrow Holder's rights and liability in this transaction is only as an Escrow Holder, and no other legal relationship is created. Escrow Holder is an Escrow Holder only on the express terms of these instructions. Escrow Holder does not have a duty or responsibility to notify Buyer, Seller, or any other party related to this escrow of any sale, resale, loan, exchange, or other transaction involving any property or of any profit realized by any person, firm, corporation, or parties (broker or agent) to this or any other escrow, regardless that such transaction(s) may be handled by it in this escrow or in another escrow. Escrow Holder shall not be required to take any action for the collection, maturity, or apparent outlaw of any obligations deposited in this escrow, unless otherwise instructed.

   B. Escrow Holder's duties are limited to the safekeeping of such money and documents received by it as an Escrow Holder and for the disposition of the same under the written instructions accepted by it in this escrow. Escrow Holder shall not be liable for any damages, losses, costs, or expenses incurred by any party in the handling and processing of this escrow due to any act or failure to act made or omitted in good faith, or for any action taken that Escrow Holder believed in good faith to be genuine.

   C. NOTWITHSTANDING ANY PROVISIONS TO THE CONTRARY IN THE PURCHASE AGREEMENT, ESCROW INSTRUCTIONS, AMENDMENTS, OR LENDER'S INSTRUCTIONS; **ESCROW HOLDER DOES NOT VERIFY SIGNATURES** OR INVESTIGATE WHETHER THERE IS IMPERSONATION, FORGERY, OR FRAUD ON DOCUMENTS TRANSMITTED OR DEPOSITED INTO THIS ESCROW.

   D. ESCROW HOLDER IS NOT LIABLE OR RESPONSIBLE IN ANY MANNER FOR THE SUFFICIENCY OR CORRECTNESS; AS TO FORM, CONTENT, MANNER OF EXECUTION, OR VALIDITY OF ANY DOCUMENTS; OR AS TO THE IDENTITY, AUTHORITY, CAPACITY, OR RIGHTS OF ANY PERSON EXECUTING THE SAME THAT ARE DEPOSITED INTO ESCROW. ESCROW HOLDER IS NOT LIABLE OR RESPONSIBLE FOR ANY LOSS THAT MAY OCCUR AS A RESULT OF FORGERIES, CYBER-CRIME, FRAUD, OR FALSE REPRESENTATIONS MADE BY OR INVOLVING THIRD PARTIES, A PRINCIPAL'S AGENT(s), OR ANY PARTY TO THIS ESCROW.

   E. Escrow Holder is authorized and instructed to deposit any and all funds received in this escrow in an "Escrow Trust Account" with FIRST AMERICAN TRUST, FSB, a nationally chartered bank located in Los Angeles, California in the name of Escrow Holder with other escrow funds pending the completion of this escrow. UNLESS OTHERWISE AGREED IN WRITING, EACH PARTY TO THIS ESCROW UNDERSTANDS THAT THE ESCROW TRUST ACCOUNT IS NON-INTEREST BEARING. NO FINANCIAL OR OTHER BENEFITS WILL BE EARNED BY, OR PROVIDED TO, ANY OF THE PARTIES WITH RESPECT TO SUCH FUNDS. NOTWITHSTANDING, ESCROW HOLDER AND ANY OF ITS AFFILIATES MAY RECEIVE DIRECT OR INDIRECT FINANCIAL AND OTHER BENEFITS FROM THE DEPOSITORY WITH RESPECT TO SUCH FUNDS. THESE BENEFITS SHALL BE TREATED AS ADDITIONAL COMPENSATION TO ESCROW HOLDER FOR ITS SERVICES IN THIS TRANSACTION.

   F. All parties depositing funds in this escrow are notified that said sums are insured only to the limits provided by the Federal Deposit Insurance Corporation. If Parties have questions about FDIC deposit insurance, they should contact their financial or legal advisors or go to https://www.fdic.gov/deposit/index.html.

4. **Responsibility of Title Company/ Sub-Escrow Holder**: If it is necessary, proper, or convenient to consummate this escrow, Escrow Holder is directed and authorized to transfer, or cause to be transferred, any funds or documents from Parties or others regarding this Escrow to a sub-Escrow Holder, including, but not limited to, any bank, trust company, title company, or licensed Escrow

Seller(s) Initials _____ / _____                              Buyer(s) Initials _____ / _____

Holder. Any such transfer of funds or documents shall be deemed a deposit under the meaning of these Escrow Instructions. Parties and any Lender are aware the title company utilized for obtaining a title insurance policy will also be utilized in this transaction as a sub-Escrow Holder. As a sub-Escrow Holder, the title company may receive loan funds for use in accordance with the Lender's Instructions and is charged with the exclusive duty of paying any taxes, obtaining beneficiary or payoff demands, and obtaining a full or partial reconveyance of any liens or encumbrances paid to place the title of the property the subject of this escrow ("Property") in the manner provided for in any lender's instructions or escrow instructions. Title Company must ensure its own underwriting conditions are satisfied before it permits the recording of any documents. Parties, Lender, and Title Company acknowledge and accept that the sole and exclusive remedy for any injury or damages arising out of the Title Company's performance as a sub-Escrow Holder shall lie only against the Title Company and not Escrow Holder.

5. **Title Insurance:**

A. Escrow Holder is instructed to open a title order with a title company to obtain its commitment to issue a policy of title insurance on the Property in the condition identified in the Escrow Instructions by Parties. Parties are responsible for ordering all endorsements desired from Title Company. Escrow Holder is not required to submit any preliminary report of title issued or documents described in any preliminary report in this escrow to any party or broker unless directed to do so in a written escrow instruction. However, Escrow Holder may do so without incurring liability to any party for such submission. Escrow Holder may transmit the preliminary report of title to any proposed lender; and may forward Title Company's assurances of title, commitments for insurance policies to any senior encumbrances or as instructed. Buyer, Seller, and Lender understand that any preliminary report obtained in this transaction is subject to the limitations of California Insurance Code §12340.11. Buyer, Seller, and Lender further understand that Escrow Holder makes no assurances, warranties, or representations as to the current or future condition of title to the Property or priority of a lien at any time.

B. Parties authorize the recordation of any instrument delivered through this escrow, when necessary or proper, for issuance of the required policy of title insurance or to close this escrow. Funds, instructions, or instruments received in this escrow may be delivered or deposited with any title insurance company or title company designated by Parties necessary to comply with the terms and conditions of this escrow. Title company fees and recording fees shall be charged to the account of the benefitting party or as identified by the Purchase Agreement.

C. Parties authorize and instruct Escrow Holder to utilize the legal description deposited into escrow, or provided by the title insurance company in this transaction, to prepare any deed or other documentation necessary to close this escrow. Escrow Holder has no duty to investigate, and does not warrant the accuracy of, said legal description and is therefore released of any and all liability, responsibility, and is held harmless in connection thereto.

D. Title Policy: Buyer and any Lender obtaining any title insurance policy understand the original title insurance policy is issued after Close of Escrow and hereby instruct the title company to forward the original title policy issued directly to them, as appropriate, to their respective address designated during this escrow.

6. **Time Is of The Essence In These Instructions**: If the date by which a Buyer's or Seller's performance is due is other than Escrow Holder's regular business day, such performance shall be due on the next succeeding business day. If the conditions of this escrow have not been completed at the expiration of the time provided for, or any extension, Escrow Holder is instructed to complete the transaction at the earliest possible date, unless a party makes a written demand upon Escrow Holder for cancellation and the return of the money and/or instruments deposited. If Escrow Holder receives a written demand to cancel this escrow it, in its sole discretion, may stop and withhold all further proceedings without liability for interest on funds held or for damages, until the demand is withdrawn by the party who made it, further mutual instructions by the Parties, or receipt of an Order in form satisfactory to Escrow Holder.

7. **Prorating Authorization**: Escrow Holder will make all prorations and adjustments based on a thirty (30)-day month unless otherwise instructed in writing. The "close of escrow" for prorations and adjustments in this escrow means the date documents are recorded, unless otherwise specified in writing.

8. **Property Taxes and Proration**: Without liability for their correctness, Escrow Holder will prorate real property taxes or special taxes based upon tax figures provided by the title company in this transaction. Parties acknowledge and understand that the Property will be reassessed upon the change of ownership. The County Tax Assessor may issue supplemental tax bills for more than the amount used for prorating purposes in this escrow. If there has been an overpayment, the overpayment amount may not be refunded by the County Tax Assessor, but may instead be held as a credit towards the payment of future taxes on the Property. Parties agree that any overpayment or underpayment of taxes shall be adjusted by and between them outside of escrow. TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED BETWEEN BUYER AND SELLER OUTSIDE OF ESCROW. Parties understand they are exclusively responsible for determining and applying for all exclusions, exemptions, and tax relief available –including but not limited to Propositions 13, 19, 58, 60, 90, and 193- and Buyer and Seller are liable for any tax, interest,

Seller(s) Initials _____ / _____                                    Buyer(s) Initials _____ / _____

or penalty imposed by the County Tax Assessor, any State Agency or Federal Agency relating to the transfer of any interest in Property. Escrow Holder is released from responsibility or liability of any kind arising out of any such overpayment; underpayment; or reassessment of taxes, which shall survive Close of Escrow.

9. **Preliminary Change of Ownership Report:** Section 480.3 of the Revenue and Taxation Code requires that an original "Preliminary Change of Ownership Report" ("PCOR") be completed and certified by Buyer, and filed concurrently with the deed to the Property or other documents that reflect a change of ownership in real property. Buyer agrees to complete and sign the PCOR and deliver the same to Escrow Holder for filing. Escrow Holder shall forward the PCOR to the title company for submission to the Recorder's Office at Close of Escrow. In the event Escrow Holder is not in receipt of the original PCOR, Escrow Holder may proceed with Close of Escrow. Buyer understands and acknowledges that the County Recorder's Office will charge an additional non-refundable fee of Twenty Dollars ($20.00) should the fully completed/certified PCOR not accompany the conveyance document for the Property or be rejected. Buyer further acknowledges that it may incur additional expenses outside of escrow or after Close of Escrow due to its failure to file a completed/certified PCOR. Buyer authorizes Escrow Holder to debit its account for said Twenty Dollars ($20.00) at Close of Escrow if the PCOR is not deposited with Escrow Holder or is rejected. Buyer is responsible for completing and returning any Change of Ownership Report required by the County Assessor's Office after Close of Escrow and is exclusively responsible for any penalty or reassessment tax imposed by the County Assessor's Office for its failure to return a Change of Ownership Report to the Office of the County Assessor.

10. **Foreign Investment In Real Property Tax Act – FIRPTA -- Withholding:** The sale of a United States real property interest by a foreign person is subject to the Foreign Investment in Real Property Tax Act of 1980 (FIRPTA) as amended by the Protecting Americans from Tax Hike Act of 2015 for income tax withholding. Persons purchasing U.S. real property interests from foreign persons must withhold 15% of the amount of the gross sales price from Seller's proceeds unless an exemption applies. One such exemption applies to transactions where the transferee acquires the real property as a principal residence for $1,000,000 or less. If a transaction qualifies for this exemption, the withholding rate remains at the existing 10%. Parties must consult with their independent tax or legal professionals and may not rely on Escrow Holder. Notwithstanding any act by Escrow Holder, Buyer shall remain the withholding party and is responsible for determining whether Seller is considered a foreign person under FIRPTA. If Seller is a foreign person, and Buyer fails to withhold, Buyer may be held liable for the tax. Escrow Holder shall not be held liable for said tax.

Seller and Buyer agree to execute and deliver to Escrow Holder any instrument, affidavit, or statement; or to perform any act reasonably necessary to carry out FIRPTA and any regulations promulgated thereunder. Seller certifies under penalty of perjury that the information on said form is true, correct, and complete. When requested Escrow Holder may provide Buyer with Seller's redacted forms deposited. Parties agree to hold Escrow Holder harmless and indemnify it regarding compliance with this instruction.

11. **California Tax Withholding: Notification To Buyer and Seller Regarding Tax Withholding Requirements On The Sale Of Real Property (CAL-FIRPTA):** Certain Sellers may be exempt from tax withholding. Each party must seek independent tax advice from a tax or legal professional or contact the FRANCHISE TAX BOARD, WITHHOLD AT SOURCE UNIT, P.O. BOX 651, SACRAMENTO, CA 95812-0651; Phone: (916) 845-4900; or Toll Free at (888) 792-4900. In accordance with Section 18662 of the Revenue and Taxation Code, a Buyer may be required to withhold an amount equal to 3 1/3% (.0333) of the sale price of the Property, or an alternative withholding calculation amount certified by the Seller in the case of a disposition of California real property interest by either:

A Seller who is an individual, trust, or estate; or when the disbursement instructions authorize the proceeds to be sent to a financial intermediary of the Seller(s).

A corporate or partnership Seller that has no permanent place of business in California immediately after the transfer of title to the California property.

Buyer may be penalized for failure to withhold taxes. The penalty is an amount equal to the greater of 10 % of the amount required to be withheld or five hundred dollars ($500). However, notwithstanding any other provision included in the California statutes referenced above, no Buyer will be required to withhold any amount, or be subject to penalty for failure to withhold if: (1) The sale price of the California real property conveyed does not exceed one hundred thousand dollars ($100,000); (2) The Seller executes a written certificate under the penalty of perjury certifying that it is a corporation or a partnership with a permanent place of business in California; or (3) The Seller, who is an individual, trust, estate, partnership, or a corporation without a permanent place of business in California, executes a written certificate under the penalty of perjury of any of the following:

The California real property being conveyed is the Seller's or decedent's principal residence (within the meaning of Section 121 of the Internal Revenue code (IRC).

The last use of the property being conveyed was by the transferor as the transferor's principal residence (within the meaning of IRC Section 121).

Seller(s) Initials _____ / _____          Buyer(s) Initials _____ / _____

The California real property being conveyed is, or will be, exchanged for property of like kind (within the meaning of IRC Section 1031), but only to the extent of the amount of gain not required to be recognized for California income tax purposes under RC Section 1031.

The California real property has been compulsorily or involuntarily converted (within the meaning of IRC Section 1033) and the Seller intends to acquire property similar or related in service or use so as to be eligible for non-recognition or gain for California income tax purposes under IRC Section 1033. .

The California real property transaction will result in a loss or net gain not required to be recognized for California income tax purposes.

For more information, Parties should refer to Form 593, Real Estate Withholding Certificate and Computation of Estimated Gain or Loss from the California Franchise Tax Board. In addition, withholding is also required for real estate foreclosures and short sale transactions unless any exemptions certified on Form 593 apply or the sale qualifies under the automatic exclusions. For more information on real estate foreclosures and short sale transactions, refer to Publication 1016, Real Estate Withholding Guidelines by the California Franchise Tax Board. Further questions regarding withholding may be answered https://www.ftb.ca.gov/pay/withholding/real-estate-withholding.html or by seeking independent professional tax advice.

Parties acknowledge that Escrow Holder does not have a duty to take any action regarding withholding without further mutual written instructions by Parties in a form satisfactory to Escrow Holder. Parties agree that Escrow Holder is not required to serve as a qualified substitute and that it is held harmless and indemnified for complying with any tax withholding instruction or any third-party claims that may arise. Parties also agree to comply with Section 18662 of California Revenue and Taxation Code (as amended). Further, Seller shall cause to be deposited into escrow such forms that may be necessary for the parties hereto to comply with said tax code, as expanded. When requested Escrow Holder may provide Buyer with Seller's redacted forms deposited.

12. **Tax Reporting/1099:** Under the Tax Reform Act, Internal Revenue Service Code Section 6045(e), Escrow Holder will report the gross proceeds from the sale of an ownership interest in reportable real estate to the Internal Revenue Service ("IRS"). Seller/Transferor is required by law to furnish a correct Taxpayer Identification Number ("TIN") or Social Security Number to Escrow Holder. Escrow Holder cannot be held liable for Seller's failure to furnish a correct Social Security Number or TIN. Each Seller/transferor must provide a permanent address to which Escrow Holder can mail the IRS Form 1099-S following Close of Escrow. If there is more than one Seller/transferor, any allocation of the gross proceeds from this transaction must be received by Escrow Holder prior to closing. If Escrow Holder fails to receive a complete allocation, or no allocation, from Seller/Transferor, it must report the entire unallocated gross proceeds to said Seller/transferor. If conflicting allocations are received, Escrow Holder must report all gross proceeds on each Seller/transferor's 1099-S Form to the IRS. Seller(s)/transferor(s) who are married or domestic partners on Close of Escrow; and who hold title to the Property as tenants in common, or community property; are each treated as a single Seller/transferor for reporting purposes.

13. **Allocation of Costs:** Escrow Holder is instructed to debit Parties under the Purchase Agreement and pay relevant bills presented before Close of Escrow. Escrow Holder has no duty or liability to pay bills received after Close of Escrow. Parties agree to pay escrow fees and charges; including messenger fees, overnight delivery charges, recording fees, wire fees, charges for evidence of title, HOA fees, notary fees, and a reasonable handling fee; if applicable at close or cancellation of escrow. Escrow Holder is authorized to use funds on deposit to pay for any credit report, appraisal, city report, lender or association statement, demand, any transfer fees, or documents that may have to be paid before closing. Funds released prior to Close of Escrow as pre-paid fees are not refundable regardless of the consummation of this escrow. If not provided for in the Purchase Agreement, the CLTA Owner's Title Insurance premium will be charged to Seller. If applicable, the ALTA Lender's Policy will be charged to Buyer at Close of Escrow, together with any other charges the title company deems necessary to close escrow. All other closing costs are charged under the Purchase Agreement. Unless otherwise instructed, Escrow Holder will debit Seller for any transfer tax that may be imposed by any City or County in which the Property is located and may pay any bonds, assessments, including HOA Assessments, taxes, or any liens of record, including any prepayment penalties to transfer title to Buyer as called for in this escrow.

14. **Reduced Fees:** Parties acknowledge and agree that, sometimes, one or both parties to this escrow may receive a rated or reduced escrow fee.

15. **Authorization to Send Documentation:** Unless otherwise instructed, Parties authorize Escrow Holder to release Estimated Closing Statements, executed Escrow Instructions, Amendments, "Short-Pay Approvals" and Final Closing Statement, or Consolidated Closing Statements, to any new lender, loan broker, "short-pay" lenders, or loan servicer necessary to close the escrow. This authorization only pertains to the documentation set forth above. Escrow Holder may furnish a copy of these Instructions, Amendments, a Notice of Cancellation, title reports, Estimated Closing Statement, and Final Closing Statement to any real estate broker, lender, or title company referenced in this escrow.

Seller(s) Initials _____ / _____                                   Buyer(s) Initials _____ / _____

16. **Personal Property:** Any personal property within the Property is exclusively between Parties and of no concern to Escrow Holder. All personal property shall have "no value" in this escrow unless otherwise assigned in a separate written instruction. Escrow Holder cannot be held liable for any damaged, lost, or stolen personal property.

17. **Beneficiary Statement/Payoff Demands:** Parties acknowledge that Escrow Holder relies on Seller's accurate identification of all loans, liens, and encumbrances on the Property to order payoff demand(s) as authorized. Escrow Holder is not liable or responsible for the contents or accuracy of any beneficiary demands, beneficiary statements, or payoff demands delivered to it by the existing lien holders or homeowner associations. Escrow Holder will forward demands or statements it received to Title Company, as sub-Escrow Holder, to reconfirm demands before paying any beneficiary, payoff demands; and before obtaining a full or partial reconveyance of any liens or encumbrances paid through the sub-escrow to place the title of the Property and priority of liens in the manner provided for in any Lender's instructions or Escrow Instructions. Escrow Holder is not liable or responsible for any prepayment or penalty charged in any beneficiary statement and/or demand and may pay through escrow any sums necessary to convey title to the Property as called for in the Escrow Instructions. Escrow Holder is not required to submit any such beneficiary statements and/or payoff demands to Parties for approval before Close of Escrow unless expressly instructed to do so in writing. Should Parties desire to pre-approve any such beneficiary statement and/or payoff demand, they shall deliver separate and specific written escrow instructions to Escrow Holder. Seller acknowledges and understands that interest on existing loans is paid in arrears and that it will be charged interest on the payoffs of existing loans until the lienholder receives the payoff funds from Title Company after Close of Escrow.

18. **New Loans:**

A. After receipt of Buyer's closing funds, Escrow Holder may permit Buyer's new lender (if any) to fund the new loan proceeds to it or Title Company, as sub-Escrow Holder, one (1) business day prior to recordation and Close of Escrow. Buyer and Lender understand that interest on any new loan funded into this escrow will accrue from Lender's funding and that there may be a delay between the funding date and the date the deed of trust is recorded. Escrow Holder cannot be held liable for the payment of interest on any loan, for the early funding by the Lender, for any delay caused by the Lender's failure to timely fund, for Lender's demand for return of funds, or based on the date of distribution of any funds through escrow. Lender acknowledges and understands that the "Close of Escrow" means the date the grant deed, or other evidence of transfer of title, is recorded; and not the date the loan funds ("closes"). Prior to Close of Escrow, Escrow Holder may return any funds received from a new lender upon demand without liability.

B. Escrow Holder is not responsible or concerned with the terms of any new loan or the content of any loan documents with this escrow. Escrow Holder's duties are limited to receiving loan documents into the escrow, transmitting the loan documents for execution before any notary, and returning the executed loan documents to Lender for review and approval. Parties and Lender acknowledge Escrow Holder does not interpret or explain loan documents, nor is it involved or concerned with the loan application, qualifications, underwriting, disclosures, approval, and processing of any loan or the contents, terms, or effects of documents prepared or used by the lender. Lenders are responsible for preparation and the sufficiency and correctness of all loan documents, disclosures, subordinations, and qualifications of the borrower in advance of funding.

C. Parties understand Escrow Holder is only a settlement agent, not a "creditor" or an agent of a "creditor," regarding new loans. Therefore, Escrow Holder is not assuming any duty or responsibility of disclosure for the "creditor" under TILA, RESPA, HOEPA, or TRID rules (15 U.S.C. 1635(a), 15 U.S.C. 1638(a), 15 U.S.C. 1639 et. seq. or as amended by the Dodd-Frank Act) regarding any loans. Regardless of any assistance it received in completing forms considered to be disclosures to the consumer, Lender/creditor shall remain liable and responsible for ensuring all State and Federal laws are satisfied. Questions regarding loan terms, documents, or disclosures must be directed to the loan broker or Lender/creditor of the party. If Escrow Holder is assisting or completing any loan closing documents, including but not limited to a Seller's Closing Disclosure ("CD") or HUD-1, which is found to be a disclosure in this transaction, it is doing so in reliance on the information provided to it by the loan brokers, venders, or lenders, and is not independently verifying the accuracy of said closing documents. Escrow Holder shall not be liable or responsible for any inaccuracies regarding disclosures in a borrowers' CD, a Loan Estimate ("LE"), a Good Faith Estimate ("GFE") Closing Statement, a comparison of costs, or the actual loan terms. Buyer(s), Borrower(s), Broker(s), and Lender/Creditors(s) accept full responsibility for the verification and accuracy of the figures of the new loan with the TRID-Closing Document, the LE, a GFE comparison of costs, disclosures, and compliance with Dodd-Frank Act and CFPB/TRID rules.

D. Escrow Holder may comply with any portion of any Lender's Instructions pertaining to usual escrow functions under California law consistent with these Escrow Instructions. If any conflict arises between the terms of any Lender's Instructions and these Escrow Instructions, these Escrow Instructions shall govern Escrow Holder. **ANY LENDER'S OR LIEN HOLDER'S INSTRUCTIONS SUBMITTED TO ESCROW HOLDER, WHICH MUST BE SIGNED BY ESCROW HOLDER, ARE SUBJECT TO THE FOLLOWING LIMITATIONS:**

Seller(s) Initials _____ / _____                                    Buyer(s) Initials _____ / _____

(1) No fiduciary relationship shall arise between Escrow Holder and any lender, lien holder, creditor, broker, or third-party;

(2) Escrow Holder does not have a duty or obligation to indemnify or reimburse any borrower(s), broker(s), or lender(s) any sum or penalty under California Financial Code §50204 and Civil Code §2948.5; or to purchase any loan, note, deed, debt, relating to this escrow for any reason;

(3) Escrow Holder is not responsible for making disclosures, warranting any facts, or performing any due diligence regarding Borrower's new loan, the source of funds, the Property, the new deed of trust, the legal sufficiency of documents, or lien priority of the security for the loan, as doing so are solely Lender's responsibilities;

(4) Escrow Holder is not warranting or insuring lender's secondary transaction for sale, purchase, guarantee by FHA, VA, PMI nor that loan is marketable for purchase by investors;

(5) Escrow Holder is not required to perform any lender's non-delegable duties regarding consumer notice, statutory disclosures, or underwriting responsibilities under California or Federal law; and lender is responsible for preparing its own documents for its loan.

(6) Escrow Holder is not required to perform title searches or the functions of a sub-Escrow Holder such as searching title, obtaining reconveyances, or satisfaction of liens.

(7) Escrow Holder is not ensuring the conduct of any Notary in the performance of its duties.

(8) Escrow Holder in no way warranties or guaranties the status of title of the Property or lien priority of any document. Rather, Escrow Holder's responsibility is limited to obtaining a commitment that a title company is prepared to issue a policy of title insurance in the manner called for by any Lender's Instructions. Lender may contact the title company if it desires an abstract of title under California Insurance Code §12340.10 as part of its due diligence and shall share information with the title company to receive the lien priority and insurance policy it desires. The cost of said abstract of title shall not be a cost of Escrow Holder.

(9) Escrow Holder is authorized and instructed to forward to Title Company the lender's instructions regarding title policies and priority of any lien or deed of trust to allow the title company to fulfill its duty to record documents, pay encumbrances, and receive any reconveyance as insurer, recorder, abstractor of title and sub-escrow in assuring title of ownership and lien priority of documents as called for in the lenders instructions.

E.   Escrow Holder shall not be responsible or concerned with any question regarding usury in any loan or encumbrance, whether new or of record, which may arise during the processing of this escrow.

**19.** **Electronic Signatures:** Escrow Holder is authorized to accept electronic signatures as original signatures upon receiving its e-signature instruction signed from all parties. Parties are advised that they may be required to submit documents with traditional original signatures into this escrow in the following circumstances, including but are not limited to: (1) where traditional live signatures are mandatory, such as recordable documents, city reports, government and/or lender documents; (2) as required by lenders; and (3) as required by Escrow Holder in its sole discretion.

**20.** **Pre-populated Forms:** Escrow Holder is hereby authorized and instructed to prepopulate required documentation within this transaction with information provided by Parties or, authorized representatives, including their brokers, through any means of communication available between Buyer, Seller and Escrow Holder. These forms and documents may include required State and Federal forms for reporting and withholding as well as other forms necessary to complete a Real Estate transaction. Parties agree and understand that these prepopulated forms or documents require their review and approval of the information, and their signatures on the forms or documents will be deemed a representation the information is true and correct, and can be relied upon.

**21.** **Property Insurance:**

A.   It is Buyer's obligation to ensure that any property hazard insurance policy regarding the real property or personal property on the Property fully complies with Lender's requirements for coverage, terms, payee(s), insured, etc., and that evidence of hazard insurance is timely deposited with Escrow Holder. Escrow Holder is hereby instructed to pay the first year's premium at Close of Escrow to Buyer's chosen insurance holder. Escrow Holder may forward a copy of any evidence of an insurance policy to Lender, if requested. Escrow Holder shall have no duty or responsibility regarding hazard insurance, except to forward the first year's premium, or evidence of payment, and the evidence of Buyer obtaining insurance to the lender. It is Buyer's or Lender's exclusive duty to verify the policy of insurance provides adequate coverage needed and they must ensure the policy or policies of insurance are actually issued and in effect after Close of Escrow.

B.   HOA Insurance: Escrow Holder is authorized and instructed to debit funds deposited by Buyer for payment of any fee assessed by the master insurance holder of the HOA for issuance of their certificate. Buyer has satisfied himself of the existence of the master insurance coverage of the HOA and is advised to fully investigate the extent and scope of its coverage and obtain any

Seller(s) Initials _____ / _____                                    Buyer(s) Initials _____ / _____

additional or supplemental coverage outside of escrow. Escrow Holder is not to be concerned nor held liable or responsible in connection therewith.

C. All Cash: In the event of an all-cash transaction, Buyer has the option of paying any hazard insurance premium through escrow by designating in writing the insurer to be used and depositing funds into escrow for the first year's premium. Buyer is exclusively responsible to confirm issuance of any policy, with the desired coverage, at Close of Escrow.

**22. No Disclosures or Warranties:**

A. Parties acknowledge that, depending on the type (Commercial or Residential) and location (City) of real property involved in this escrow, there may be disclosure(s) and civil or municipal ordinance requirement(s) that affect transferring real property. Escrow Holder urges Parties to seek appropriate counsel from an attorney or licensed real estate broker to ascertain what disclosures, certificates, reports, and/or civil or municipal ordinances they must comply with outside of escrow prior to Close of Escrow. Parties' signatures upon these Escrow Instructions shall be deemed evidence to Escrow Holder that they have obtained independent counsel and know of any disclosures, certificates, reports, civil or municipal ordinance requirements, and will comply with same outside of this escrow. Unless otherwise instructed in writing to the contrary within the body of these Escrow Instructions, Escrow Holder has no responsibility or liability for any such disclosures, notices, or reports regarding civil or municipal ordinances.

B. Escrow Holder is not responsible or liable for the validity, regularity, or sufficiency of municipal property reports, parking disclosures, or retrofit standards to be complied with upon transferring real property. Escrow Holder may forward a request or application for a Residential Property Report or Certificate of Compliance received to the appropriate governmental agency. Unless otherwise instructed, Escrow Holder will charge Seller any fee to file such document. Escrow Holder is not responsible, and cannot be held liable for the accuracy of, the contents, or timeliness of any request, application, or response of any governmental agency. Any property reports or certificates deposited into escrow are a courtesy copy, which Escrow Holder is not required to forward to any party.

C. Escrow Holder is not responsible or concerned with giving any disclosures except as expressly required by Federal or State law to be given by an Escrow Holder. Escrow Holder has no responsibility or concern with the lender(s) loan disclosures; effect of zoning ordinances; land division regulations; homeowner associations or building occupancy restrictions or certificates; and covenants, conditions, or restrictions (CC&Rs) that may pertain to or affect the land or improvements of the Property. Parties must satisfy themselves outside of escrow that the transaction covered by this escrow does not violate the Subdivision Map Act or any other law regulating land sub-division, CC&R's or homeowners association rules. Escrow Holder is not responsible or liable for any disclosure or use regulation pertaining to or affecting the land or improvements that are the subject of this escrow. Escrow Holder shall have no duty and is not liable to any party for disclosure or non-disclosure of any facts within its knowledge relating to the subject property or parties unless they effect Escrow Holder's compliance with these Escrow Instructions. Parties' signatures on these Escrow Instructions evidence their acceptance and understanding of their duty to exclusively and independently investigate all use limitations pertaining to or affecting the land or improvements of the Property.

**23. Property Condition:** Escrow Holder makes no physical examination or inspection of any real or personal property described in these Escrow Instructions or in any instrument or document deposited with it. Escrow Holder accepts no agency or duty, and none may be implied in any manner under California Civil Code §1102.11, any other statute, ordinance, authority, or written agreement for making or giving any disclosures under transferring residential property laws or local ordinances. Parties expressly acknowledge and understand that Escrow Holder has no duty or liability for the physical condition, use, or habitability of any property the subject of this escrow.

**24. Disbursements:** Disbursements shall be made by Escrow Holder either by check or wire transfer. Unless otherwise instructed, all documents and funds due to respective parties will be mailed by United States Mail to said parties' addresses provided to Escrow Holder. Escrow Holder does not have a duty to verify the addresses provided to it. Checks not presented for payment within six (6) months are subject to a service charge of thirty-five dollars ($35.00), for which Escrow Holder is entitled to reimbursement. Escrow Holder does not have control over, and cannot be held liable for, a bank's or post office's untimely processing or receipt of any disbursement. It is the duty of the party receiving the disbursement to provide Escrow Holder the correct and accurate wire instructions. Escrow Holder does not have a duty to verify said wiring instructions. Escrow Holder is not responsible or liable for any loss or damages caused by delays, rejections, or mis-delivery of wire transfers due to any act by a third-party, any incorrect routing or account numbers, account payees or account beneficiaries, or acts of a banking institution that Escrow Holder is directed to wire funds to.

**25. Assignment of Proceeds:** If Parties unilaterally assign or order the proceeds of this escrow to be paid to any third party, such

Seller(s) Initials _____ / _____                                    Buyer(s) Initials _____ / _____

assignment or order is subordinated to the expenses of this escrow, liens of record on the Property, and payments directed to be made by original parties together. If the result of such assignment or order would be to leave the Escrow without sufficient funds to close, Escrow Holder is authorized and directed to close and pay such assignments or orders out of the net proceeds due in the order in which such assignment or orders are received. If any assignment or transfer of interest is by operation of law, with or without the approval or consent of any or all of the parties hereto, Escrow Holder shall retain the right to deduct any and all escrow costs, fees, and expenses provided for or under its current fee schedule from said assigned or transferred funds, property or rights, prior to payment. Escrow Holder has the right to reject any assignment or order not in satisfactory form or that creates undue risk to it.

26. **Dishonored Checks:** If any check submitted to escrow is dishonored upon presentment for payment, Escrow Holder may notify all parties, their respective brokers, or any other person or entity Escrow Holder deems necessary to notify of such nonpayment. The party submitting the dishonored check shall reimburse Escrow Holder for any costs or expenses in connection therewith. SELLER'S EXCLUSIVE LEGAL OR EQUITABLE REMEDY FOR ANY INJURY FROM THE DISHONORING OF ANY CHECK OR FUNDS FROM BUYER SHALL LIE ONLY AGAINST BUYER AND NOT ESCROW HOLDER.

27. **Reimbursement of Funds:** If Escrow Holder disburses more funds to, or for the benefit of, any Party, agent or broker, than they are entitled to receive, or if the escrow has a shortage to or for the benefit of any party, that benefitting party agrees to repay Escrow Holder the overpayment or shortage within five (5) days of its demand, after which interest shall accrue at the rate of ten percent (10%) per annum. If there is any failure to pay Escrow Holder's demanded sum, fees, costs or expenses due, Parties agree to pay a reasonable fee for any attorney's services which Escrow Holder incurs to collect such fees, costs, or expenses, in addition to any other fees, costs or damages a court may otherwise determine.

28. **Document Retention/Electronic Records:** Parties acknowledge, consent, and expressly authorize Escrow Holder to convert, store, or otherwise maintain any original documents (including executed purchase agreements) or copies submitted to it in an electronic format or medium for all purposes. Upon Escrow Holder's transfer of any document into an electronic format, it is expressly authorized to destroy the original paper documents submitted to it, without liability. Parties agree that electronic record or data maintained by Escrow Holder will be admissible in any legal, administrative, or other proceedings as conclusive evidence of the contents of those documents in the same manner as original paper documents, and Parties waive any right to object to the introduction of any electronic data or records into evidence. Parties authorize Escrow Holder to destroy these Escrow Instructions and all other instructions, documents and electronic records of this escrow after five (5) years from Close of Escrow, cancellation of escrow, or date of the last activity without liability and without further notice to the parties.

29. **No Liability for Third Party Providers**: Parties understand and agree that Escrow Holder is not a party to any agreements or arrangements entered by them with a third-party service provider. Such third-party service providers, including, but not limited Notary, Brokers, and Inspectors, are neither employees nor agents of Escrow Holder. Escrow Holder has no control over the services or conduct of third-party service providers and disclaims all liability in this regard.

30. **Witness Fees:** If any officer, employee, or representative of Escrow Holder must respond to any subpoena or other order to appear in an action or proceeding in which Escrow Holder's breach or fault is not at issue, the party requiring such appearance agrees to indemnify and hold Escrow Holder harmless against all costs, expenses, and reasonable attorney's fees it expended or incurred for such appearance. In addition to the amounts provided for by law, the party requiring such appearance shall pay to Escrow Holder and each officer, employee(s), or representative(s), the sum of $400.00 as an additional witness fee for each day or part thereof that an officer, employee or representative of Escrow Holder must appear. As a condition precedent to any obligation to appear under such subpoena or order, the party requesting such appearance must, concurrently with the service of the subpoena or order, pay the additional witness fee agreed to for each day's actual attendance, even if no testimony is given.

31. **Choice of Law:** These instructions must be construed and interpreted according to California law and are performed in Los Angeles County, California.

32. **Legal Fees:** IN THE EVENT ANY PARTY TO THIS ESCROW, INCLUDING ESCROW HOLDER, INSTITUTES OR DEFENDS ANY LITIGATION AT LAW, INCLUDING CONTRACT, TORT, OR ACTIONS IN EQUITY ARISING OUT OF THIS ESCROW, THE PREVAILING PARTY SHALL, IN ADDITION TO SUCH OTHER RELIEF AS MAY BE AWARDED, BE ENTITLED TO RECOVER REASONABLE ATTORNEY'S FEES, COSTS, CHARGES, AND EXPENSES OF SUCH LITIGATION.

33. **Limitations of Liability:**

    **A. UNDER NO CIRCUMSTANCES, OTHER THAN FRAUD OR WILLFUL MISCONDUCT BY ESCROW HOLDER, SHALL ESCROW HOLDER HAVE ANY RESPONSIBILITY FOR DAMAGES IN EXCESS OF $50,000.00 UPON A FINDING OF LIABILITY AGAINST IT. THIS SECTION IS OF KEY IMPORTANCE TO ESCROW HOLDER. ESCROW HOLDER WOULD NOT ENTER INTO THIS AGREEMENT IN THE ABSENCE OF THIS SECTION. THIS SECTION SHALL SURVIVE TERMINATION OF THIS AGREEMENT OR**

Seller(s) Initials _____ / _____             Buyer(s) Initials _____ / _____

CANCELLATION OF THIS ESCROW.

**B. NO ACTION SHALL LIE AGAINST ESCROW HOLDER FOR ANY CLAIM, LOSS, LIABILITY, OR ALLEGED CAUSE OF ACTION OF ANY KIND OR NATURE WHATSOEVER, HOWEVER CAUSED OR OCCURRED, UNDER THIS ESCROW, OR IN CONNECTION WITH THE HANDLING OR PROCESSING OF THIS ESCROW, UNLESS BROUGHT WITHIN TWELVE (12) MONTHS AFTER THE CLOSE OF ESCROW OR ANY CANCELLATION OR TERMINATION OF ESCROW FOR ANY REASON WHATSOEVER.**

34. <u>No Legal, Financial or Tax Advice:</u> PARTIES ACKNOWLEDGE AND UNDERSTAND THAT ESCROW HOLDER IS NOT AUTHORIZED TO PRACTICE LAW NOR DOES IT GIVE FINANCIAL ADVICE. PARTIES ARE ADVISED TO SEEK LEGAL AND FINANCIAL COUNSEL AND ADVICE CONCERNING THE EFFECT OR CONSEQUENCES OF THE PURCHASE AGREEMENT, THESE OR SUBSEQUENT ESCROW INSTRUCTIONS, ANY LOAN DOCUMENTS, OR OTHER FINANCIAL/TAX DOCUMENTS. PARTIES ACKNOWLEDGE AND UNDERSTAND THAT NO REPRESENTATIONS ARE MADE BY ESCROW HOLDER AND NO RELIANCE CAN BE PLACED ON THE LEGAL SUFFICIENCY, LEGAL CONSEQUENCES, FINANCIAL EFFECTS, OR TAX CONSEQUENCES OF ANYTHING WITHIN THIS ESCROW TRANSACTION BASED ON ESCROW HOLDER'S REPRESENTATIONS OR CONDUCT AT ANY TIME.

35. <u>Conflicting Demands/Instructions & Interpleader Actions:</u> If conflicting demands are made upon Escrow Holder, or notice is given of any controversy or legal action among Parties and/or third person(s) relating to this escrow, Escrow Holder is not required to determine or resolve conflicting demands or claims or take any action. But, Escrow Holder has the absolute right to stop and withhold all further proceedings to perform this escrow, without liability, until any such conflicting demands or claims have been determined, resolved, or eliminated by mutual written agreement of the parties, a valid amendment or supplement to the Escrow Instructions, or a final order or judgment of a court of competent jurisdiction in form satisfactory to Escrow Holder is deposited into escrow. Escrow Holder may also, in its sole discretion, sue in interpleader or declaratory relief action, and is instructed and authorized to deposit any documents or funds which are the subject of conflicting demands or claims with the court under any such action, less Escrow Holder's escrow fees, costs, and attorney's fees incurred. Parties acknowledge and understand that any irrevocable escrow instruction received and accepted by Escrow Holder is not subject to conflicting demands. Irrevocable escrow instructions can be amended or revoked only with the written consent of Parties to the irrevocable escrow instructions. Escrow Holder cannot be liable for complying with its irrevocable escrow instructions.

36. <u>Resignation:</u> At any time prior to Close of Escrow, Escrow Holder may, for any reason and without liability, give written notice to Parties and resign as Escrow Holder. Escrow Holder is still entitled to its escrow fee as compensation for the escrow services performed and reimbursement of all costs and expenses incurred up to resignation. The balance of any funds, property, or documents shall be returned to the parties who deposited the same or forwarded to a new Escrow Holder as mutually designated in writing by Parties.

37. <u>Documents submitted electronically:</u> A photocopy of these Instructions shall have the same force and effect as the original. The parties agree that Escrow Holder may, but is not obliged to, act upon any instructions which are e-mailed or sent by way of facsimile to Escrow Holder and Escrow Holder does not need the original document in order to act. Escrow Holder has no responsibility for verifying the validity of any document/s deposited into escrow, nor the identity, authority or rights of any person executing any document/s in the escrow. Escrow Holder shall not be liable for any loss of whatsoever nature that may occur as a result of forgeries, fraud or false representations made by or involving the principals to this escrow, their agent/s, broker/s or any other party or entity.

38. <u>General Authorizations:</u>

A. Escrow Holder is authorized, in its sole discretion, to rely and act upon facsimile instructions, electronic instructions (e-mail), and copies of purported instructions; including, but not limited to, escrow instructions, amendments modifications, demands, lender instructions, pay-off instructions, and bills from Parties or third parties as though they are original instructions signed by the Parties or third parties. Escrow Holder is entitled to follow and rely on such instructions without further verification or inquiry. However, if Escrow Holder elects, in its sole discretion, to authenticate or verify any amendments or instructions received, it may refuse to follow such amendments or instructions until they have been authenticated or verified in a manner satisfactory to Escrow Holder. **In the event Escrow Holder elects to authenticate or verify any instructions or amendments, Parties shall release and indemnify Escrow Holder from any loss, cost, damage, or expense they or any third party may directly or indirectly suffer or incur.** Parties understand and acknowledge that, if they choose to use an unsecure electronic device to communicate with Escrow Holder, including but not limited to, facsimile or unencrypted electronic mail that: (1) security, privacy and confidentiality cannot be ensured; (2) such communication is not reliable and may not be received by the Escrow Holder in a timely manner or at all, and (3) such communication could be subject to interception, loss, or alteration. **Parties hereby release and indemnify Escrow Holder from and against any loss, cost, damage or expense Escrow Holder, Borrower, Lender, or any other party may directly or indirectly suffer or incur by Escrow Holder relying on any such facsimile and electronic communication.**

Seller(s) Initials _____ / _____                                                     Buyer(s) Initials _____ / _____

B.  Escrow Holder may use any standardized or preprinted form to comply with these Escrow Instructions. Escrow Holder may also use its own forms or any usual forms of any title company. Moreover, Escrow Holder may insert dates and terms on the instruments if incomplete when executed by a party.

**39.  Miscellaneous Conditions:**

A.  This escrow will be processed in the English language. Should any party elect to use a language translator to assist them in understanding the escrow process, or any documentation relating to this escrow, that language translator will be selected and provided by the party needing such assistance. Escrow Holder will not provide language translation services. If any language translation is provided by Escrow Holder, it is rudimentary, solely as a courtesy, and may not be relied upon. Escrow Holder will not be liable or responsible for the correctness of any language translator's interpretation of the escrow process or of any other documentation that is a part of this escrow. Any signature on a document shall be relied upon by Escrow Holder that the signor fully understood and accepted the terms in the documents.

B.  These Escrow Instructions may be executed in counterparts, each of which shall constitute one and the same document.

C.  If any instruction or term in these Escrow Instructions is held invalid by judicial proceeding, the remaining shall continue to be operative and enforceable.

**40.  Cancellation:** Parties, jointly and severally, agree that if escrow is cancelled, terminated, or otherwise not closed, they shall pay Escrow Holder its escrow fee, and the costs and expenses incurred or obligated to pay in processing this transaction. This will include, but is not limited to, courier fees, filing fees, attorney's fees and costs, third-party vender fees for services performed for this escrow before cancellation is effective. Parties further agree that such costs, expenses, and fees shall be paid from funds already on deposit or deposited in escrow before any cancellation or other termination of this escrow is effective. However, Parties agree that charges, expenses, costs, and fees may be apportioned in a manner which, in Escrow Holder's sole discretion, it considers equitable. Escrow Holder's decision regarding the apportionment of such fees, charges, and costs will be binding and conclusive upon Parties. Upon receipt of mutual cancellation instructions, a final order or judgment of a court of competent jurisdiction with writs of execution, levies or garnishments in form satisfactory to Escrow Holder, Escrow Holder is instructed to disburse the escrow funds and instruments, less its costs, expenses, and escrow fees, under such cancellation instruction, order, judgment, or writ; and, without further notice, cancel or terminate the escrow.

**41.  No Activity Cancellation:** Parties agree that, if Escrow Holder does not receive additional instructions from one or both of them within 120 days from the date escrow is scheduled to close, or any written extension, it may consider the escrow cancelled and may take its escrow fee or a reasonable fee, not less than $500.00, based on its determination of services performed. Any remaining deposits, documents, or other items held by Escrow Holder may be disbursed to the depositors or parties specified in the instructions. Nothing restricts Escrow Holder's ability to file an interpleader action if a dispute occurs over the distribution of funds deposited with escrow.

Seller(s) Initials _____ /_____          Buyer(s) Initials _____/_____

42.  I/We agree to pay FUNDS REQUIRED TO CLOSE ESCROW UPON DEMAND.

**THE UNDERSIGNED PARTIES HEREBY ACKNOWLEDGE THEY HAVE RECEIVED AND READ THESE ADDITIONAL ESCROW INSTRUCTIONS AND GENERAL PROVISIONS AND APPROVE, ACCEPT AND AGREE TO BE BOUND HEREBY.**

**SELLER:**                                             **BUYER:**

                                                        Dara and Thomas Barber Trust
_____
Mark A. Cirillo                                         By:_____
                                                            Dara Barber, Trustee

                                                        By:_____
                                                            Thomas Joseph Barber, Trustee

Seller(s) Initials _____ / _____                                        Buyer(s) Initials _____ / _____

EXHIBIT "A"
LEGAL DESCRIPTION

Lot 14 of Tract 4831, in the City of Los Angeles, County of Los Angeles, State of California, as shown on map filed in Book 54, Page 90 of Maps in the office of the County Recorder of said County. Except: the east 84 feet thereof.

Seller(s) Initials _____ / _____

Buyer(s) Initials _____ / _____



## PRIVACY POLICY

**Last Updated and Effective Date**: December 1, 2024

Pango Group and its subsidiaries and affiliates (collectively, "Pango Group," "we," "us," or "our") describe in our full privacy notice ("Notice"), which can be found at [www.pangogroup.com/privacy-policy/](www.pangogroup.com/privacy-policy/), how we collect, use, store, and share your information when: (1) you access or use our websites, mobile applications, web-based applications, or other digital platforms where the Notice is posted ("Sites"); (2) you use our products and services ("Services"); (3) you communicate with us in any manner, including by e-mail, in-person, telephone, or other communication method ("Communications"); (4) we obtain your information from third parties, including service providers, business partners, and governmental departments and agencies ("Third Parties"); and (5) you interact with us to conduct business dealings, such as the personal information we obtain from business partners and service providers and contractors who provide us certain business services ("B2B"). Personal information is sometimes also referred to as personal data, personally identifiable information or other like terms to mean any information that directly or indirectly identifies you or is reasonably capable of being associated with you or your household. However, certain types of information are not personal information and thus, not within the scope of our Notice, such as: (1) publicly available information; and (2) de-identified and aggregated data that is not capable of identifying you. If we use de-identified or aggregated data, we commit to maintain and use the information in a non-identifiable form and not attempt to reidentify the information, unless required or permitted by law.

This Notice applies wherever it is posted. To the extent a Pango Group subsidiary or affiliate has different privacy practices, such entity shall have their own privacy statement posted as applicable.

**What Type Of Personal Information Do We Collect About You?** We collect a variety of categories of information about you. To learn more about the categories of information we collect, please visit [https://pangogroup.com/privacy-policy/](https://pangogroup.com/privacy-policy/).

**How Do We Collect Your Personal Information?** We collect your information: (1) directly from you; (2) automatically when you interact with us; and (3) from third parties, including business parties and affiliates.

**How Do We Use Your Personal Information?** We may use your information in a variety of ways, including but not limited to providing the services you have requested, fulfilling your transactions, comply with relevant laws and our policies, and handling a claim. To learn more about how we may use your information, please visit [https://pangogroup.com/privacy-policy/](https://pangogroup.com/privacy-policy/).

**How Do We Share Your Personal Information?** We do not sell your personal information. We only share your information, including to subsidiaries, affiliates, and to unaffiliated third parties: (1) with your consent; (2) in a business transfer; and (3) for legal process and protection. To learn more about how we share your information, please visit [https://pangogroup.com/privacy-policy/](https://pangogroup.com/privacy-policy/).

**How Do We Store and Protect Your Personal Information?** The security of your information is important to us. We take commercially reasonable steps to make sure your information is protected. We use our best efforts to maintain commercially reasonable technical, organizational, and physical safeguards, consistent with applicable law, to protect your information.

**How Long Do We Keep Your Personal Information?** We keep your information for as long as necessary in accordance with the purpose for which it was collected, our business needs, and our legal and regulatory obligations.

**Your Choices:** We provide you the ability to exercise certain controls and choices regarding our collection, use, storage, and sharing of your information. You can learn more about your choices by visiting [https://pangogroup.com/privacy-policy/](https://pangogroup.com/privacy-policy/).

**International Jurisdictions**: Our Services are offered in the United States of America (US), and are subject to US federal, state, and local law. If you are accessing the Services from another country, please be advised that you may be transferring your information to us in the US, and you consent to that transfer and use of your information in accordance with the Notice. You also agree to abide by the applicable laws of applicable US federal, state, and local laws concerning your use of the Services, and your agreements with us.

**Changes to Our Notice:** We may change the Notice from time to time. Any and all changes to the Notice will be reflected on this page and in the full Notice, and where appropriate provided in person or by another electronic method. **YOUR CONTINUED USE, ACCESS, OR INTERACTION WITH OUR SERVICESOR YOUR CONTINUED COMMUNICATIONS WITH US AFTER THIS NOTICE HAS BEEN PROVIDED TO YOU WILL REPRESENT THAT YOU HAVE READ AND UNDERSTOOD THE NOTICE.**

**For California Residents:** If you are a California resident, you may have certain rights under California law, including but not limited to the California Consumer Privacy Act of 2018, as amended by the California Privacy Rights Act and its implementing regulations. To learn more, please visit [https://pangogroup.com/privacy-policy/](https://pangogroup.com/privacy-policy/).

**Contact Us** [dataprivacy@glenoaksescrow.com](mailto:dataprivacy@glenoaksescrow.com) or at 1-323-210-1667.

# EXHIBIT C

**Glen Oaks Escrow**

6100 San Fernando Road
Glendale, CA 91201
(818) 502-0400

# Seller's Estimated Closing Statement

| | | | | | |
|---|---|---|---|---|---|
| **Property** | 2640 Vineyard Avenue | **Escrow Officer** | John Salmon | **Prepared** | 01/28/2026 |
| | Los Angeles, CA 90016 | **Seller** | Mark A. Cirillo | **Closing** | 02/17/2026 |
| **Escrow #** | 110-194973-JS | | | **Disbursement Date** | 02/17/2026 |
| **Title #** | 3910125-08711 | | | **Title by** | Equity Title Company |

| | Debit | Credit |
|---|---|---|
| **Primary Charges & Credits** | | |
| Sale Price of Property | | $1,139,000.00 |
| | | |
| **Prorations/Adjustments** | | |
| County Taxes ($5,378.57) 02/17/2026 to 07/01/2026 | | $2,002.02 |
| Seller Credit to Buyer for Closing Costs | $10,660.00 | |
| | | |
| **Payoffs/Payments** | | |
| Payoff to Shellpoint Mortgage Servicing | $440,000.00 | |
| Principal : $440,000.00 | | |
| Payoff to Chase Bank | $77,000.00 | |
| Principal : $77,000.00 | | |
| Payoff to California First PACE | $30,398.63 | |
| Principal : $30,398.63 | | |
| | | |
| **Government Recording and Transfer Charges** | | |
| City Transfer Tax (Deed) to Los Angeles County Recorder's Office | $5,125.50 | |
| County Transfer Tax (Deed) to Los Angeles County Recorder's Office | $1,252.90 | |
| | | |
| **Commissions** | | |
| Listing Agent Commission to Brick & Mortar, Inc. dba Brick and Mortar Real Estate | $28,475.00 | |
| Selling Agent Commission to Aspire Los Angeles | $28,475.00 | |
| | | |
| **Title Charges** | | |
| Owner's Title Insurance to Equity Title Company | $2,826.00 | |
| Sub Escrow Fee to Equity Title Company | $62.50 | |
| | | |
| **Escrow Charges** | | |
| Escrow Processing Fee/Doc Prep Fee to Glen Oaks Escrow | $190.00 | |
| Settlement or Closing Fee to Glen Oaks Escrow | $2,912.75 | |
| | | |
| **Miscellaneous Charges** | | |
| Certificate of Compliance Filing Fee to Los Angeles Department of Water and Power | $15.00 | |
| Home Warranty to First American Home Warranty | $695.00 | |
| Natural Hazard Disclosure Report to MyNHD, Inc. | $74.95 | |
| Reimbursement of Fees Advanced for City Report to Glen Oaks Escrow | $72.76 | |
| Retrofitting to RetrofitLA | $174.00 | |
| Wildfire Fortress Disclosure Report to Property ID | $139.00 | |
| Property Taxes for 2nd Half 2025-2026 | $4,474.91 | |
| | Debit | Credit |
| **Subtotals** | **$633,023.90** | **$1,141,002.02** |
| Due to Seller | $507,978.12 | |
| **Totals** | **$1,141,002.02** | **$1,141,002.02** |

# EXHIBIT D

Fill in this information to identify your case:

| | | | |
|---|---|---|---|
| Debtor 1 | **Mark** | **Anthony** | **Cirillo** |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | **Central** | District of | **California** |
| Case number (if known) | **2:25-bk-16724-WB** | | |

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD / YYYY

---

Official Form 106I

# Schedule I: Your Income
12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:  Describe Employment

| 1. Fill in your employment information. | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| If you have more than one job, attach a separate page with information about additional employers. Include part-time, seasonal, or self-employed work. Occupation may include student or homemaker, if it applies. | Employment status | ☑ Employed<br>☐ Not employed | ☐ Employed<br>☐ Not employed |
| | Occupation | | |
| | Employer's name | **Project Angel Food** | |
| | Employer's address | Number    Street | Number    Street |
| | | | |
| | | City    State    ZIP Code | City    State    ZIP Code |
| | How long employed there? | | |

## Part 2:  Give Details About Monthly Income

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2.  $2,990.00 | |
| 3. | Estimate and list monthly overtime pay. | 3. +  $0.00 | + |
| 4. | Calculate gross income. Add line 2 + line 3. | 4.  $2,990.00 | |

Debtor 1    __Mark__    __Anthony__    __Cirillo__    Case number *(if known)* __2:25-bk-16724-WB__
   First Name    Middle Name    Last Name

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| Copy line 4 here............................................................ ➔ | 4. | $2,990.00 | |

5. **List all payroll deductions:**

|  |  | | |
|---|---|---|---|
| 5a. **Tax, Medicare, and Social Security deductions** | 5a. | $0.00 | |
| 5b. **Mandatory contributions for retirement plans** | 5b. | $0.00 | |
| 5c. **Voluntary contributions for retirement plans** | 5c. | $0.00 | |
| 5d. **Required repayments of retirement fund loans** | 5d. | $0.00 | |
| 5e. **Insurance** | 5e. | $0.00 | |
| 5f. **Domestic support obligations** | 5f. | $0.00 | |
| 5g. **Union dues** | 5g. | $0.00 | |
| 5h. **Other deductions.** Specify: _____ | 5h. + | $0.00 | + _____ |

6. **Add the payroll deductions.** Add lines 5a + 5b + 5c + 5d + 5e +5f + 5g + 5h.    6.    $0.00

7. **Calculate total monthly take-home pay.** Subtract line 6 from line 4.    7.    $2,990.00

8. **List all other income regularly received:**

8a. **Net income from rental property and from operating a business, profession, or farm**

Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income.    8a.    $2,000.00

8b. **Interest and dividends**    8b.    $0.00

8c. **Family support payments that you, a non-filing spouse, or a dependent regularly receive**

Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement.    8c.    $0.00

8d. **Unemployment compensation**    8d.    $0.00

8e. **Social Security**    8e.    $0.00

8f. **Other government assistance that you regularly receive**

Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies.
Specify: _____    8f.    $0.00

8g. **Pension or retirement income**    8g.    $0.00

8h. **Other monthly income.** Specify: _____    8h. +    $0.00    + _____

9. **Add all other income.** Add lines 8a + 8b + 8c + 8d + 8e + 8f + 8g + 8h.    9.    $2,000.00

10. **Calculate monthly income.** Add line 7 + line 9.
Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.    10.    $4,990.00    +    _____    =    $4,990.00

11. **State all other regular contributions to the expenses that you list in *Schedule J*.**

Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.

Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J*.

Specify: _____    11. +    $0.00

| Debtor 1 | Mark | Anthony | Cirillo | | Case number *(if known)* | 2:25-bk-16724-WB |
|---|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | | |

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income.
Write that amount on the *Summary of Your Assets and Liabilities and Certain Statistical Information*, if it applies

12. **$4,990.00**

**Combined monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**

☑ No.

❏ Yes. Explain:

| Debtor 1 | Mark | Anthony | Cirillo | Case number *(if known)* | 2:25-bk-16724-WB |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

8a. Attached Statement

## Business Income

FINANCIAL REVIEW OF THE DEBTOR'S BUSINESS (NOTE: ONLY INCLUDE information directly related to the business operation.)

PART A - ESTIMATED AVERAGE FUTURE GROSS MONTHLY INCOME:

1. Gross Monthly Income: $0.00

PART B - ESTIMATED AVERAGE FUTURE MONTHLY EXPENSES:

2. Payments to be Made Directly by Debtor to Secured Creditors for Pre-Petition Business Debts

   TOTAL PAYMENTS TO SECURED CREDITORS $0.00

3. Other Expenses

   TOTAL OTHER EXPENSES $0.00

4. TOTAL MONTHLY EXPENSES (Add item 2 - 21) $0.00

PART C - ESTIMATED AVERAGE NET MONTHLY INCOME:

5. AVERAGE NET MONTHLY INCOME (Subtract item 22 from item 1) $0.00

| Debtor 1 | **Mark** | **Anthony** | **Cirillo** | Case number *(if known)* | **2:25-bk-16724-WB** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

8a. Attached Statement

### Rental Income

| | | |
|---|---|---|
| 1. | Gross Monthly Income: | $2,000.00 |
| 2. | TOTAL EXPENSES | $0.00 |
| 3. | AVERAGE NET MONTHLY INCOME | $2,000.00 |

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Mark**    **Anthony**    **Cirillo** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | **Central District of California** |
| Case number | **2:25-bk-16724-WB** |
| (if known) | |

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 expenses as of the following date:

_____
MM / DD / YYYY

## Official Form 106J

# Schedule J: Your Expenses

**12/15**

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1: Describe Your Household

**1. Is this a joint case?**

☑ No. Go to line 2.

☐ Yes. **Does Debtor 2 live in a separate household?**

    ☐ No

    ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household of Debtor 2.*

**2. Do your expenses include dependents?**

Do not list Debtor 1 and Debtor 2.

Do not state the dependents' names.

☑ No

☐ Yes. Fill out this information for each dependent..............

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| _____ | _____ | ☐ No.  ☐ Yes. |
| _____ | _____ | ☐ No.  ☐ Yes. |
| _____ | _____ | ☐ No.  ☐ Yes. |
| _____ | _____ | ☐ No.  ☐ Yes. |
| _____ | _____ | ☐ No.  ☐ Yes. |

**3. Do your expenses include expenses of people other than yourself and your dependents?**

☑ No

☐ Yes

### Part 2: Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

| | | Your expenses |
|---|---|---|
| **4.** The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot. | 4. | **$0.00** |
| **If not included in line 4:** | | |
| 4a. Real estate taxes | 4a. | **$0.00** |
| 4b. Property, homeowner's, or renter's insurance | 4b. | **$0.00** |
| 4c. Home maintenance, repair, and upkeep expenses | 4c. | **$100.00** |
| 4d. Homeowner's association or condominium dues | 4d. | **$0.00** |

| Debtor 1 | **Mark** | **Anthony** | **Cirillo** | Case number *(if known)* | **2:25-bk-16724-WB** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

| | | **Your expenses** |
|---|---|---|

| 5. | Additional mortgage payments for your residence, such as home equity loans | 5. | **$0.00** |
|---|---|---|---|
| 6. | **Utilities:** | | |
| | 6a. Electricity, heat, natural gas | 6a. | **$350.00** |
| | 6b. Water, sewer, garbage collection | 6b. | **$0.00** |
| | 6c. Telephone, cell phone, Internet, satellite, and cable services | 6c. | **$300.00** |
| | 6d. Other. Specify: _____ | 6d. | **$0.00** |
| 7. | **Food and housekeeping supplies** | 7. | **$400.00** |
| 8. | **Childcare and children's education costs** | 8. | **$0.00** |
| 9. | **Clothing, laundry, and dry cleaning** | 9. | **$50.00** |
| 10. | **Personal care products and services** | 10. | **$100.00** |
| 11. | **Medical and dental expenses** | 11. | **$150.00** |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | 12. | **$150.00** |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. | **$0.00** |
| 14. | **Charitable contributions and religious donations** | 14. | **$0.00** |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | |
| | 15a. Life insurance | 15a. | **$0.00** |
| | 15b. Health insurance | 15b. | **$0.00** |
| | 15c. Vehicle insurance | 15c. | **$0.00** |
| | 15d. Other insurance. Specify: _____ | 15d. | **$0.00** |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: _____ | 16. | **$0.00** |
| 17. | **Installment or lease payments:** | | |
| | 17a. Car payments for Vehicle 1 | 17a. | **$535.00** |
| | 17b. Car payments for Vehicle 2 | 17b. | **$0.00** |
| | 17c. Other. Specify: _____ | 17c. | **$0.00** |
| | 17d. Other. Specify: _____ | 17d. | **$0.00** |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 106I).** | 18. | **$0.00** |
| 19. | **Other payments you make to support others who do not live with you.** Specify: _____ | 19. | **$0.00** |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income.*** | | |
| | 20a. Mortgages on other property | 20a. | **$0.00** |
| | 20b. Real estate taxes | 20b. | **$0.00** |
| | 20c. Property, homeowner's, or renter's insurance | 20c. | **$0.00** |
| | 20d. Maintenance, repair, and upkeep expenses | 20d. | **$0.00** |
| | 20e. Homeowner's association or condominium dues | 20e. | **$0.00** |

| Debtor 1 | **Mark** | **Anthony** | **Cirillo** | Case number *(if known)* **2:25-bk-16724-WB** |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

21.  **Other.** Specify: _____    21.  +    _____ **$0.00**

22.  **Calculate your monthly expenses.**

22a. Add lines 4 through 21.    22a.  _____ **$2,135.00**

22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2    22b.  _____ **$0.00**

22c. Add line 22a and 22b. The result is your monthly expenses.    22c.  _____ **$2,135.00**

23.  **Calculate your monthly net income.**

23a. Copy line 12 (your combined monthly income) from *Schedule I.*    23a.  _____ **$4,990.00**

23b. Copy your monthly expenses from line 22c above.    23b.  −  _____ **$2,135.00**

23c. Subtract your monthly expenses from your monthly income.
The result is your *monthly net income.*    23c.  _____ **$2,855.00**

24.  **Do you expect an increase or decrease in your expenses within the year after you file this form?**

For example, do you expect to finish paying for your car loan within the year or do you expect your
mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

☑ No.
☐ Yes.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

3090 Bristol Street #400
Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled: **DEBTOR'S MOTION FOR AUTHORITY TO SELL REAL PROPERTY UNDER LBR 3015-1 (p)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) __1/29/2026__, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Nancy K Curry (TR)    inquiries@trusteecurry.com, TrusteeECFMail@gmail.com
Christopher Giacinto    PLG@ecf.courtdrive.com, PLG@ecf.courtdrive.com
Genail Nemovi    ecfnotify@nemovilawgroup.com
Jacqueline D Serrao    jds@cabkgroup.com, attorneygary@gmail.com,BNK@idealawgroupllc.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (date) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 1/29/2026 | Benjamin Heston | /s/Benjamin Heston |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.